IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Jermaine B. Wright, ) | Case No. 8:12-cv-01456-JFA-JDA |
| ) | |
| Plaintiff, ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| v. ) | |
| ) | |
| Dr. Moore, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

This matter is before the Court on a motion for summary judgment filed by Defendant. [Doc. 27.] Plaintiff is proceeding pro se and brings this civil rights action pursuant to 42 U.S.C. § 1983. [Doc. 1.] Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under § 1983 and to submit findings and recommendations to the District Court.

Plaintiff filed this action on May 29, 2012.[1] [Doc. 1.] On November 14, 2012, Defendant filed a motion for summary judgment. [Doc. 27.] On November 15, 2012, the Court filed an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the summary judgment procedure and of the possible consequences if he failed to adequately respond to the motion. [Doc. 28.] Plaintiff filed a response in opposition on December 19, 2012. [Doc. 30.] Accordingly, Defendant's motion is now ripe for review.

---

[1] A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). In this case, construing the filing date in the light most favorable to Plaintiff, this action was filed on May 29, 2012. [Doc. 1-3 (envelope marked as received by prison mailroom on May 29, 2012).]

## BACKGROUND

Plaintiff is an inmate of the South Carolina Department of Corrections ("SCDC") and at all times relevant to this action was housed at Perry Correctional Institution ("Perry").[2] [Doc. 1 at 2.] Plaintiff alleges he has bone spurs in both heels and torn and overstretched ligaments in one knee, and although he was initially provided some treatment for these issues, Defendant, SCDC's medical director, has denied Plaintiff proper footwear since December 2010. [*Id.* at 3–5.] Plaintiff alleges his shoes are worn out, which is causing his pain to increase and prevents him from walking normally or for a long period of time. [*Id.* at 4.] Plaintiff further alleges the condition of his feet has worsened the condition of his knee. [*Id.* at 4–5.] Plaintiff seeks monetary damages, injunctive relief in the form of surgical and nonsurgical treatment for his bone spurs and knee, and any other relief the Court sees deems appropriate. [*Id.* at 6.]

## APPLICABLE LAW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, a pro se complaint is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means that only if the court can reasonably read the

---

[2]Plaintiff is currently housed at Ridgeland Correctional Institution. [Doc. 32 (notice of change of address).]

2

pleadings to state a valid claim on which the complainant could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999).  A court may not construct the complainant's legal arguments for him.  *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993).  Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under § 1983**

This action is filed pursuant to 42 U.S.C. § 1983, which provides a private cause of action for constitutional violations by persons acting under color of state law.  Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).  Accordingly, a civil action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

Section 1983 provides, in relevant part,

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ."

42 U.S.C. § 1983.  To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [the plaintiff] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [the plaintiff] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage."

*Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (third alteration in original) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments. This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley,* 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted). Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State . . . or by a person for whom the State is responsible" and that "the party charged with the deprivation [is] a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct

4

of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999) (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at

252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.  Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## **DISCUSSION**[3]

Plaintiff contends Defendant was deliberately indifferent to his serious medical needs by denying and interfering with treatment. [Docs. 1, 30, 30-1.] Defendant argues Plaintiff has failed to establish his claim because he has failed to show he had a serious medical need and that Defendant exhibited deliberate indifference to Plaintiff's medical needs. [Doc. 27-1 at 6–10.] The Court agrees with Defendant.

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment and states a cause of action under § 1983 because deliberate indifference constitutes "the 'unnecessary and wanton infliction of pain.'" *Estelle*, 429 U.S. at 104–05 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.)). Deliberate indifference exists when prison officials know of a substantial risk to a prisoner's health or safety and consciously disregard that risk. *See Farmer v. Brennan*, 511 U.S. 825, 836 (1994); *Miltier v. Beorn*, 896 F.2d 848, 851–52 (4th Cir. 1990) ("Deliberate indifference may be demonstrated by either actual intent or reckless disregard. A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the

---

[3] Although not raised by Defendant in his motion for summary judgment, the Court notes Plaintiff's claims against Defendant in his official capacity must be dismissed. The Eleventh Amendment prohibits federal courts from entertaining an action against a state. *See, e.g.*, *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam) (citations omitted); *Hans v. Louisiana*, 134 U.S. 1, 10–11 (1890). Further, Eleventh Amendment immunity "extends to 'arm[s] of the State,' including state agencies and state officers acting in their official capacity," *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996) (alteration in original) (internal citations omitted), because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . [and] is no different from a suit against the State itself," *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted). Therefore, Eleventh Amendment immunity protects state agencies and state officials sued in their official capacities from liability for monetary damages under 42 U.S.C. § 1983. *Id.* As a result, to the extent Plaintiff has alleged claims against Defendant in his official capacity, those claims must be dismissed because Defendant is entitled to immunity pursuant to the Eleventh Amendment.

defendant's position." (citation omitted)).  Within the United States Court of Appeals for the Fourth Circuit, "the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness" to violate a prisoner's Eighth Amendment rights.  *Miltier*, 896 F.2d at 851.

To prevail on an Eighth Amendment claim, the prisoner must demonstrate (1) his medical condition was a sufficiently serious one and (2) subjectively, the prison officials acted with a sufficiently culpable state of mind, which is satisfied by showing deliberate indifference by the prison officials.  *Goodman v. Wexford Health Sources, Inc.*, No. 09-6996, 2011 WL 1594915, at *1 (4th Cir. Apr. 28, 2011) (quoting *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998)).  As the United States Supreme Court has explained,

> Since, we said, only the "'unnecessary *and wanton* infliction of pain'" implicates the Eighth Amendment, a prisoner advancing such a claim must, at a minimum, allege "deliberate indifference" to his "serious" medical needs.  "It is *only* such indifference" that can violate the Eighth Amendment; allegations of "inadvertent failure to provide adequate medical care," or of a "negligent . . . diagnos[is]," simply fail to establish the requisite culpable state of mind.

*Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (emphasis and alteration in original) (citations omitted).  Further, in the context of prisoner medical care, the Constitution requires only that prisoners receive adequate medical care; a prisoner is not guaranteed his choice of treatment.  *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988) (citing *Layne v. Vinzant*, 657 F.2d 468, 471 (1st Cir. 1981)); *see Russell v. Sheffer*, 528 F.2d 318, 318 (4th Cir. 1975) (citing *Blanks v. Cunningham*, 409 F.2d 220 (4th Cir.1969); *Hirons v. Director*, 351 F.2d 613 (4th Cir.1965)) ("Prisoners are entitled to reasonable medical care."); *see also, e.g.*, *Barton v. Dorriety*, No. 9:10-cv-1362, 2011 WL 1049510, at *2 (D.S.C. Mar. 21, 2011)

(citing *Jackson*, 846 F.2d at 817). The fact that a prisoner believed he had a more serious injury or that he required better treatment does not establish a constitutional violation. *See, e.g.*, *Russell*, 528 F.2d at 319.

Assuming without deciding that Plaintiff's alleged injury is a sufficiently serious medical condition,[4] Plaintiff has failed to establish a genuine issue of material fact remains as to whether Defendant acted with a sufficiently culpable state of mind. First, Plaintiff acknowledges in the Complaint that Plaintiff's conditions were not ignored. [*See, e.g.*, Doc. 1 at 3–4 (alleging Plaintiff received medication, sneakers, and a therapy band).] Plaintiff merely complains he was not provided additional treatment, such as new shoes and surgery. As explained above, the Constitution requires only that a prisoner receive adequate medical care; the Constitution does not mandate that a prisoner receive the medical treatment of his choice. *See, e.g.*, *Jackson*, 846 F.2d at 817.

Second, evidence produced by Defendant precludes finding Defendant consciously disregarded a known substantial risk to Plaintiff's health or safety. Plaintiff's medical records show that he injured his knee in December 2007. [Doc. 27-3 at 51.] Medical personnel saw him on an emergency basis, administered steroids, issued crutches and a "meals to dorm" pass, and scheduled an x-ray. [*Id.*] No fractures and no acute process were identified in the x-ray, and Plaintiff's joint spaces appeared well-maintained. [*Id.* at 62.] Over the following months, Plaintiff was given ibuprofen, prescribed physical therapy,

---

[4] "A medical need is 'serious' if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gaudreault v. Municipality of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir. 1990) (citing *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3rd Cir. 1987); *Hendrix v. Faulkner*, 525 F. Supp. 435, 454 (N.D. Ind.1981)).

9

and sent to SCDC's orthopedic doctor. [*Id.* at 48–50.] No complaints about Plaintiff's feet were noted during this time period. [*See id.* at 48–51.]

In January 2009, Plaintiff complained that his right foot had been hurting and swollen for weeks. [*Id.* at 42.] Perry medical personnel prescribed medication and ordered gel cup inserts for Plaintiff's shoes and x-rays of both feet. [*Id.* at 41–42.] The x-rays, taken in February 2009, revealed very small plantar spurs on Plaintiff's heels; no other abnormalities were noted. [*Id.* at 41, 60–61.]

Plaintiff did not return to medical with heel complaints until the end of June 2009, when he complained that the gel cup inserts were not helping. [*Id.* at 39.] Plaintiff was prescribed ibuprofen and given Epsom salt to soak his feet. [*Id.*] A podiatry consult request was sent to SCDC's then-Chief Medical Doctor, Dr. Michael Benoir. [*Id.* at 75.] Dr. Benoir disapproved the podiatry consult but recommended that, in place of the SCDC standard issue boots, Plaintiff try tennis shoes from the commissary with shoe inserts. [*Id.*]

In May 2010, Defendant, who had replaced Dr. Benoir as SCDC's Chief Medical Doctor, received a podiatry consult request from Perry for Plaintiff's small plantar heel spurs. [*Id.* at 74.] Exercising his professional judgment, Dr. Moore determined that an appointment with a podiatrist was not medically necessary. [*Id.*; Doc. 27-2 ¶¶ 2–3.] A second set of x-rays of Plaintiff's feet taken in May 2010 showed Plaintiff's heel spurs had not changed in the year and three months since the prior x-rays. [Doc. 27-3 at 58–59.]

In June 2010, Plaintiff again complained about his knee, and over the next year, Perry medical staff and the orthopedic specialist at Kirkland Correctional Institution addressed Plaintiff's knee complaints. [*Id.* at 24–32.] During this time, Defendant

approved an orthopedic consult, and the orthopedic doctor prescribed medication, physical therapy, and a knee brace and recommended Plaintiff follow up in four months with an x-ray. [*Id.* at 73.] The doctor also noted Plaintiff could buy his own shoes, and another note clarified "if okayed per security." [*Id.*] Another orthopedic consult was sent by the medical staff at Perry soon after Plaintiff's visit. [*Id.* at 72.] Defendant determined that this consult was unwarranted and declined the request, although Defendant also recommended Plaintiff have a bottom bunk and perform only sedentary work. [*Id.* at 30, 72.]

In May 2011, Plaintiff complained about his heels and his shoes. [*Id.* at 25.] The nurse noted Plaintiff was dragging his feet and that his shoes appeared torn and the soles were peeling off. [*Id.*] On follow up with the nurse practitioner, Plaintiff's shoes were noted to be very worn on the bottom, and a consult request for Riddell shoes was faxed to Defendant. [*Id.*] Defendant determined new shoes were not a medical necessity for Plaintiff and denied the request. [*Id.*; Doc. 27-2 ¶ 3.] Defendant received several more requests for new shoes for Plaintiff. [*See, e.g.*, Doc. 27-3 at 22, 23.] Defendant denied these requests because (1) he determined new shoes for Plaintiff were not a medical necessity and, therefore, did not need to come from medical, and (2) Plaintiff could obtain new shoes from the canteen or his prison. [Doc. 27-2 ¶¶ 2–4.]

At the same time Defendant received the May 2011 shoe consult request, he also received an orthopedic consult request for a follow-up appointment regarding Plaintiff's knee. [Doc. 27-3 at 25, 69.] Defendant approved this request. [*Id.* at 25, 69.] The orthopedic doctor prescribed more medication for Plaintiff and sent him to an orthopedic physical therapy clinic to begin theraband strengthening therapy for his knee. [*Id.* at 71; *see*

11

*id.* at 70 (detailing June 2011 physical therapy appointment).] The orthopedic doctor also noted Plaintiff needed new shoes, but the doctor did not write a shoe prescription or note that the shoes were a medical necessity. [*Id.*]

On December 29, 2011, even though he acknowledged he still had problems with his feet, Plaintiff asked Perry medical staff to remove work restrictions from his health summary so he could work in the prison brick masonry. [*Id.* at 20.] The nurse noted Plaintiff's gait was steady, although he had a slight limp, and that he did not appear to have a physical abnormality. [*Id.*] On another occasion, Perry medical staff witnessed Plaintiff walking normally but changing to a limp when he noticed medical staff observing him. [*Id.* at 22–23; *see also id.* at 5 (noting at a sick call visit where Plaintiff stated he was in excruciating pain that Plaintiff ambulated and got on the scale without assistance; sat up on the examination table without assistance or an outward sign of pain; followed commands of active range of motion with no difficulty; moved to lying supine position without difficulty or assistance; and moved through full range of motion with his ankles, knees, and hips).]

In February 2012, Defendant approved another orthopedic consult. [*Id.* at 68.] As part of the orthopedic exam, Plaintiff's knee was x-rayed, which showed no evidence of a fracture or destructive change, although there was a moderate-sized suprapatellar effusion. [*Id.* at 57.] The orthopedist recommended Plaintiff receive a MRI and continue NSAIDS and self-physical therapy. [*Id.* at 67.] The MRI was approved [*id.* at 66] and performed [*id.* at 56]. The MRI revealed there was no meniscal tear and the cruciate and collateral ligaments were intact, with "perhaps mild contour changes of the posterior cartilage of the

12

lateral tibial plateau." [*Id.*] Plaintiff returned to the orthopedic clinic in May 2012, where the orthopedist made no operative indication, issued a neoprene sleeve, recommended Plaintiff continue conservative care, and advised that Plaintiff could purchase shoes if that was okay with security.  [*Id.* at 64; *see also id.* at 8 (noting orthopedic clinic visit and recommendations in Plaintiff's medical summary).]  Plaintiff was also discharged from the orthopedic clinic. [*Id.* at 64.] From March 2012 through June 2012, Plaintiff was a no show for all but one of his sessions of theraband exercises, and his sessions were eventually discontinued.[5]  [*Id.* at 7–17.]

Thus, the evidence shows that, when Plaintiff complained of heel spurs and knee pain, he was provided treatment for these ailments.  A claim of deliberate indifference to serious medical needs requires a greater showing than Plaintiff has made here, even

---

[5]Defendant notes Plaintiff's medical records indicate Plaintiff was a no show for almost all of his theraband sessions.  [Doc. 27-1 at 6.]  In response, Plaintiff contends he was not authorized to go to the sessions and further explains,

> During that time period, my theraband session was expired, and I was suppose to go to my follow-up to the orthopedic doctor during that time. Perry medical staff forgot to schedule me for the follow-up to see the orthopedic doctor.  That is about the third time that has happened.  (Ex. #12).  That portion of the record has been altered and does not give a true account, and is their attempt to cover up their failure to keep up with the appointments.

[Doc. 30-1 at 6; *see also id.* at 8 ("The missed therapy sessions are an insert to the record . . . to make it seem as if I was not doing what I was suppose[d] to.").]  However, the record before the Court does not support Plaintiff's argument that Defendant is trying to "cover up [a] failure to keep up with the appointments."  In fact, the record reflects that a follow-up orthopedic appointment was not scheduled within three months as recommended by the orthopedist. [*See* Doc. 27-3 at 71 (noting at June 22, 2011 orthopedic appointment that Plaintiff should follow up in three months), 68 (noting on February 23, 2012 orthopedic consult request that Plaintiff was last evaluated by the orthopedic clinic in June 2011, which recommended Plaintiff follow up in three months).]  Further, the record shows that, during the period Plaintiff was noted as a "no show" for his theraband sessions, Plaintiff received care for his knee, including two visits to the orthopedic clinic and x-rays and a MRI of his right knee.  [*Id.* at 7–17.]  Nothing in the record suggests that Plaintiff's theraband sessions were "expired" during this period, and Plaintiff has failed to provide anything other than his own bare assertions to support his argument that the record has been altered to cover up failures by persons who are not named as defendants to this action.

13

assuming Plaintiff's medical needs were serious and that a finding of negligence on the part of Defendant could be supported by the evidence. *See Daniels v. Williams*, 474 U.S. 327, 328 (1986) (holding the Due Process Clause is not implicated by a negligent act by a prison official that causes an unintended loss of or injury to life, liberty, or property); *Estelle*, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."). Accordingly, Plaintiff has failed to demonstrate a genuine issue of material fact remains as to whether Defendant was deliberately indifferent to Plaintiff's medical needs.[6]

---

[6]To the extent Plaintiff has alleged a claim against Defendant under a theory of supervisory liability [*see, e.g.*, Doc. 30-1 at 3], such claim should be denied. Because there is no doctrine of respondeat superior in § 1983 claims, *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691–94 (1978), a defendant is liable in his individual capacity only for his personal wrongdoing or supervisory actions that violated constitutional norms, *see Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (setting forth elements necessary to establish supervisory liability under § 1983). A plaintiff must establish three elements to prevail under § 1983 on a theory of supervisory liability:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices[]"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Id.* (citations omitted); *see also Jones v. Corr. Care Solutions*, No. 0:09-cv-269, 2010 WL 2639788, at *2 (D.S.C. June 7, 2010) (noting that, under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), supervisory liability may no longer be a viable § 1983 claim).

　　Here, Plaintiff has failed to demonstrate sufficient facts to establish any of the three necessary parts of a supervisory liability claim. First, Plaintiff failed to show Defendant had actual or constructive knowledge of a pervasive risk of harm to Plaintiff's rights. As discussed above, Plaintiff has failed to establish that his constitutional rights were violated; therefore, there was no pervasive risk of harm of which Defendant should have been aware. Second, Plaintiff has failed to show Defendant acted with deliberate indifference with respect to Plaintiff's medical needs. Also as discussed, Plaintiff's medical needs were addressed by medical personnel, and, although Plaintiff may disagree with the treatment he received, Defendant was not deliberately indifferent to Plaintiff's medical needs. Finally, Plaintiff has failed to establish a causal link between any inaction on the part of Defendant and the alleged violation of Plaintiff's constitutional rights because Plaintiff failed to demonstrate Defendant's subordinates were deliberately indifferent to Plaintiff's medical needs. Therefore, Plaintiff has failed to state a claim under a theory of supervisory liability.

**CONCLUSION**

Wherefore, based upon the foregoing, the Court recommends Defendant's motion for summary judgment be GRANTED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin<br>United States Magistrate Judge

April 22, 2013
Greenville, South Carolina

---

Further, to the extent Plaintiff has alleged a claim against Defendant under the Americans with Disabilities Act ("ADA") [*see, e.g.*, Doc. 1 at 5; Doc. 30-1 at 3], such claim should be denied. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132. In part, a plaintiff seeking relief under the ADA must present sufficient evidence to establish that he has a disability. *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005) (citations omitted). Here, Plaintiff has failed to allege facts supporting a finding that he is disabled or that a disability played a role in his treatment, and therefore, he has failed to state a claim pursuant to the ADA.

Finally, to the extent Plaintiff has alleged a claim against Defendant for Defendant's failure to follow relevant SCDC policies [*see, e.g.*, Doc. 1 at 5; Doc. 30 at 1; Doc. 30-1 at 3, 5, 9, 11], such claim should be denied. A violation of a prison policy that does not amount to a constitutional violation is not a viable § 1983 claim. *Keeler v. Pea*, 782 F. Supp. 42, 44 (D.S.C. 1992) (stating that § 1983 "guarantees a person's *constitutional* rights against violation by state actors. It does not provide any relief against prison rules violations assuming, *arguendo*, that such a violation occurred" (emphasis in original)); *see also Riccio v. Cnty. of Fairfax, Va.*, 907 F.2d 1459, 1469 (4th Cir. 1990) ("If state law grants more procedural rights than the Constitution would otherwise require, a state's failure to abide by that law is not a federal due process issue."). Accordingly, Plaintiff has failed to state a claim based on Defendant's alleged failure to follow relevant SCDC policies.

15